**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DORIS WILLIAMS,<br><br>           Plaintiff,<br><br>v.<br><br>ATLANTIC HEALTH SYSTEM,<br><br>           Defendant. | Civil Action No. 15-cv-06366 (JLL) (JAD)<br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff initiated this action by filing a Complaint with the Court that alleges Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. In accordance with Federal Rule of Civil Procedure 78, the Court has considered the submissions of the parties and decides this matter without oral argument. For the reasons set forth below, the Court grants Defendant's motion for summary judgment and denies Plaintiff's cross-motion.

### BACKGROUND

The following facts are undisputed by the parties unless noted otherwise.

#### Factual Background

Plaintiff Doris Williams ("Plaintiff" or "Ms. Williams"), an African American woman, completed and signed an Employment Application ("Application") for a secretary/tech position with Defendant Atlantic Health System ("Defendant" or "AHS") on July 23, 2013. Lewis 56.1

1

Statement ¶ 19, 23; Harwin 56.1 Answer ¶ 19. The Application included the following statements:

> I understand that any misstatement, omission or misleading information given in my application or interview or in connection with other Atlantic Health System records may result in the rejection of my application, the withdrawal of any offer of employment or my dismissal.
>
> …
>
> I also authorize Atlantic Health System to conduct a check into my criminal conviction record.

Lewis 56.1 Statement Id. ¶ 21; Anders Decl. Ex. 10. The Application also prompted an applicant to designate by checking a corresponding box of either "yes" or "no" if the individual has "ever been convicted of any criminal violation of law or offense or are [] now under pending investigation or charges of violation of criminal law or offense." Lewis 56.1 Statement ¶ 20; Anders Decl. Ex. 10. Ms. Williams answered the aforementioned question on the Application by checking the box indicating "no." Id. Following an interview with Lynne Emond ("Ms. Emond"), Nurse Manager at AHS, Ms. Williams was offered the position on a per diem basis at a rate of $17.56 per hour. Id. ¶¶ 23, 24. Ms. Emond was the only person from AHS that Ms. Williams met with personally. Id. ¶ 23. Ms. Williams' new hire orientation date was set for December 16, 2013. Id. ¶ 25.

Plaintiff's Criminal Background Check

As a health care provider, AHS conducts post-offer criminal background checks on all individuals who receive a conditional offer of employment. Lewis 56.1 Statement ¶ 26. To perform the checks AHS retains the services of TABB, Inc. Id. ¶ 27. On December 5, 2013, TABB completed Ms. Williams' criminal background check, which indicated that Ms. Williams had been convicted or pled guilty in a criminal matter. Id. ¶ 28.

Ms. Williams' criminal history includes the following incidents. In 1991, Plaintiff was arrested in Randolph Township and pled guilty to driving while intoxicated ("DWI"). Lewis 56.1 Statement ¶ 4. At that time, Ms. Williams was also charged with the possession of cocaine of which Ms. Williams ultimately pled guilty to a downgraded offense of drug paraphernalia and received a conditional discharge. Id. ¶ 5. In 1992, Ms. Williams was arrested and pled guilty to a DWI in Randolph Township. Due to her 1991 DWI, Ms. Williams' license was suspended; thus, as a result of her 1992 DWI, Ms. Williams was also charged with driving with a suspended license. Id. ¶ 6. Ms. Williams pled guilty to said offense. Id. From 1992 through July 23, 2013, Williams' employment application date with AHS, she had been arrested several times for driving with a suspended license and pled guilty to each offense. Id. ¶ 7. Due to these offenses, Ms. Williams' license was further suspended, she served jail time and she also spent time in the Sheriff's Labor Assistance Program ("SLAP"). Id. ¶ 7.

On September 3, 2011, Ms. Williams was arrested by the New Jersey State Police for a DWI, during which, pursuant to a search incident to arrest, Ms. Williams was found to be in possession of marijuana. Id. ¶ 8. On October 31, 2011, Ms. Williams pled guilty to this offense, which required her to pay fines, attend the Intoxicated Driver Resource Center and spend ten days in SLAP. Id. ¶ 9. That same day, Ms. Williams received a conditional discharge for the drug possession offense. Id. ¶ 10. Thereafter on February 8, 2012, the Montville Municipal Court received a letter from the Sussex County Probation Division advising that Ms. Williams "had a previous conditional discharge in 1991 out of Randolph Township Municipal Court. As such, she is ineligible to be on Conditional Discharge for the instant offense." Id. ¶ 11. On December 18, 2012, Ms. Williams was arrested in the Town of Newton for driving with a

suspended license. Id. ¶ 12.  On April 30, 2013, as a result of her guilty plea, Ms. Williams license was revoked for six months and she was sentenced to ten days in jail Id. ¶ 12.

Due to her ineligibility for a second conditional discharge, the Montville Municipal Court sent Ms. Williams court notices to appear on the following dates: April 8, 2013; June 17, 2013; July 1, 2013; July 29, 2013; September 9, 2013; and October 7, 2013. Id. ¶ 13. Ms. Williams asserts however that she never received any of the notices since they were mailed to the wrong address due to an error in the zip code on the envelopes. Harwin 56.1 Statement ¶ 13.

<u>Officer Van Dright and Williams' Conversation</u>

In light of this finding, Officer John Van Dright ("Officer Van Dright"), Manager of Protection and Security at AHS, called Ms. Williams in early December 2013.  Id.  The exact date[1] and contents of the telephone conversation between Officer Van Dright and Ms. Williams are in dispute.  Lewis 56.1 Statement ¶ 32; Harwin 56.1 Answer ¶ 32.  The following sets forth the facts of the phone conversation as provided by the parties:

> *Telephone Conversation as provided by Defendant:*
>
> - Officer Van Dright explained his role in reviewing background checks for applicants and indicated to Williams that something came up on her background check. Lewis 56.1 Statement ¶ 32.
>
> - In response to Officer Van Dright's statement, Williams volunteered that her criminal history could not indicate any activity because she was never involved with law enforcement. Id.
>
> - Officer Van Dright then read the question regarding an applicant's criminal history from the Application to Williams verbatim and further indicated to Ms. Williams that she had responded "no" to this inquiry on the Application. Id. ¶ 33.

---

[1] AHS contends that Officer Van Dright called Ms. Williams on December 6, 2013 whereas Ms. Williams claims the conversation took place on December 9, 2013.  Lewis  56.1 Statement ¶ 31; Harwin 56.1 Answer ¶ 32.

- Ms. Williams again represented to Officer Van Dright that she had no knowledge of any arrests and that it was only until after Officer Van Dright read the above referenced question an additional time that Ms. Williams "came clean and admitted that she might have been arrested." Id. ¶¶ 33, 34.

- Officer Van Dright informed Ms. Williams that he had received information from Montville Municipal Court regarding an incident in which she was involved with law enforcement and then Ms. Williams acknowledged that there was an incident involving marijuana.[2] Id. ¶ 35.

### *Telephone Conversation as provided by Plaintiff:*

- Officer Van Dright called Williams and stated that she had lied on the Application because she did not disclose that she had been convicted of a crime. Harwin 56.1 Statement ¶ 32.

- In response to Officer Van Dright's accusation, Ms. Williams advised Officer Van Dright that she had not been convicted of a crime and Officer Van Dright then stated that Ms. Williams had been arrested. Id.

- Ms. Williams asserts that she told Officer Van Dright that being arrested and having a criminal conviction are not the same and that the Application never asked whether the applicant had been arrested. Id.

- Ms. Williams denies representing to Officer Van Dright that she had not been arrested, instead Ms. Williams asserts that she had acknowledged that she had been arrested, the Application however did not inquire into whether an applicant had ever been arrested. Id. ¶¶ 33, 34.

---

[2] Plaintiff denies this part of the conversation ever took place. Further, Plaintiff asserts that Officer Van Dright "never asked Plaintiff if there was an incident that involved drugs or marijuana. If he did, Plaintiff would have told him yes since by this time the conditional discharge was vacated she had plead guilty to a violation of a municipal ordinance." Harwin 56.1 Statement ¶ 16.

Subsequent to the phone conversation, Officer Van Dright contacted the Montville Municipal Court during which he spoke with Carmen Calle ("Calle"), Deputy Court Administrator. Id. ¶¶ 35, 36. According to Officer Van Dright, Calle provided that Ms. Williams had initially received a conditional discharge relating to her September 3, 2011 arrest for the possession of marijuana however a court date was pending for the possession of marijuana charge because the conditional discharge had been rescinded by the court after the court became aware that Williams had lied to the Judge when she said she never received any prior conditional discharge. Id. ¶¶ 36, 37. Williams asserts that she did not lie to the court. Rather, at the time she entered a plea in the Montville Municipal Court, Williams contends that she did not remember receiving a prior conditional discharge since it was so long ago. Harwin 56.1 Answer ¶ 15. Additionally, Williams admits that there was uncertainty about the conditional discharge entered in the Montville Municipal Court, but she did not learn of the uncertainty until well after she completed the Application, which was on July 23, 2013. Id. ¶ 16. AHS asserts that as a result of Officer Van Dright's investigation he did not approve Ms. Williams for hire because she had not been truthful in the application process[3]. Lewis 56.1 Statement ¶ 40.

## Procedural History

On January 21, 2014, Ms. Williams filed a charge against AHS with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that AHS discriminated against her based on her race. Lewis 56.1 Statement ¶ 1. After conducting an investigation, on July 29,

---

[3] Ms. Williams denies this statement of fact made by AHS and counters that Officer Van Dright "[k]new the issue of the revoked conditional discharge occurred after the Plaintiff completed the Application on July 23, 2013. As such, Officer Van Dright knew that Plaintiff did not lie on her application." Because Ms. Williams here fails to make any reference to the record, the Court deems this fact undisputed. *See* L. Civ. R. 56. 1 (citing *Tantillo v. CitiFinancial*, 2013 U.S. Dist. Lexis 21832 (D.N.J. Feb. 19, 2013) (facts not identified by references to record deemed admitted)).

2015 the EEOC issued a right to sue letter and a determination concluding that the available information failed to establish AHS violated any of the statutes. Anders Decl. Ex 2. Thereafter, on August 22, 2015, Plaintiff initiated this matter with the Court by filing a one count Complaint (ECF No. 1, "Compl.") claiming Defendant's failure to hire Plaintiff was in contravention of Title VII. Defendant AHS filed the instant motion for summary judgment (ECF No. 40, "Def.'s Mot. Summ. J.") on February 15, 2017. Plaintiff then opposed Defendant's motion on March 4, 2017 and simultaneously filed its cross motion for summary judgment (ECF No. 41, "Pl.'s Mot. Summ. J."). On March 20, 2017, Defendant filed a reply (ECF No. 44, "Def.'s Reply"). Plaintiff subsequently filed a sur-reply (ECF No. 47, "Pl.'s Reply") on April 1, 2017. For the reasons that follow, the Court grants Defendant's motion for summary judgment and denies Plaintiff's cross-motion.

### STANDARD FOR A MOTION ON SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, a Court may grant a party's motion for summary judgment when that moving party demonstrates that there is no genuine issue of material fact and the evidence establishes that the moving party is entitled to judgement as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). A dispute is factual if a reasonable jury could return a verdict for the non-movant and a dispute is material, if under the substantive law, it would affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party bears the burden of proof at trial, it must establish the absence of a genuine issue of material fact on all essential elements of its case that it bears at trial. *In re Bressman*, 327 F. 3d 229, 238 (3d Cir. 2003).

Once the moving party fulfills its initial burden, the nonmoving party must establish there is a material fact for trial by presenting actual evidence rather than mere allegations. *Id.* at 256-57. A nonmoving party creates a genuine issue of material fact by presenting sufficient evidence so that a reasonable jury could render a decision in their favor. *Marino v. Indus. Crating Co.*, 358 F. 3d 241, 247 (3d Cir. 2004)(citing *Anderson*, 477 U.S. at 255). "A district court must not engage in credibility determinations or weighing of the evidence, rather the nonmoving party's evidence is to be believed and all justifiable inferences are to be drawn in its favor." *Id.*

## DISCUSSION

Since Williams' race discrimination allegations rely solely on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies to her Title VII claim. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Scott v. IBM Corp.*, 196 F.R.D. 233, 241 (D.N.J. 2000). Under *McDonnell Douglas*, a plaintiff alleging an employment discrimination claim under Title VII bears the initial burden of establishing a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. After such a showing by the plaintiff, the burden of production then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the plaintiff's rejection or termination from employment. *Id.*; *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990); *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667-68 (3d Cir. 1999); *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 412 (3d Cir. 1999). Once the defendant sets forth a legitimate, nondiscriminatory reason, "the aggrieved [plaintiff] employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the [defendant] employer's proffered reasons are false or pretextual." *Fasold v. Justice*, 409 F. 3d 178, 183 (citing *Sarullo v. United States Postal Serv.*, 352 F.3d 789,

797 (3d Cir. 2003). "While the burden of production may shift, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff'." *Jones*, 198 F.3d at 410 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

Defendant asserts that it is entitled to summary judgment because Ms. Williams cannot establish a *prima facie* case of employment discrimination under Title VII, AHS had a legitimate non-retaliatory reason for its employment actions and lastly, Ms. Williams has failed to provide sufficient evidence to support an inference that the reason AHS rescinded Ms. Williams' employment offer was based on pretext rather than a legitimate, non-retaliatory reason. *See* Def.'s Mot. Summ. J. Plaintiff's cross-motion claims summary judgment on the issue of liability is appropriate in its favor because Plaintiff has proven a *prima facie* case of race discrimination, Defendant had no legitimate reason to terminate the Plaintiff since Officer Van Dright knew Ms. Williams did not lie on her application, and Plaintiff has proven a *prima facie* case of disparate impact discrimination fulfilling her ultimate burden under the last prong of the *McDonnell Douglas* framework. Additionally, Plaintiff supports her motion claiming that Defendant was aware that Ms. Williams was African American. For the reasons set forth below, the Court finds Defendant is entitled to summary judgment since Defendant has established there are no genuine issues of fact of which a reasonable jury would find in favor of the Plaintiff.

A. Prima Facie Case of Race Discrimination under Title VII

A *prima facie* case of discrimination under Title VII requires a showing that: (1) the plaintiff "belongs to a protected class"; (2) the plaintiff "was qualified for the position"; (3) the plaintiff "was subject to an adverse employment action despite being qualified"; and (4) the adverse employment action occurred under circumstances raising an inference of discrimination.

*Sarullo*, 352 F.3d at 788 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973));

*Pivirotto v. Innovative Sys., Inc.,* 191 F. 3d 344, 348 n.1, 352, 356 (3d Cir. 1999)). "The central

focus of the *prima facie* case is always whether the employer is treating some people less

favorably than others because of their race, color, religion, sex, or national origin." *Sarullo*, 352

F.3d at 798 ((citing *Pivirotto*, 191 F.3d at 352)(quoting *Int'l Bhd. of Teamsters v. United States*,

431 U.S. 324, 335 n.15, 52 L. Ed. 2d 396, 97 S. Ct. 1843 (1977))(internal quotations omitted)).

AHS moves for summary judgment arguing that Ms. Williams' discrimination claim fails

because she has not fulfilled her burden in establishing the fourth element of a *prima facie* case.

Def.'s Mot. Summ. J. 5.   In support of this assertion, AHS sets forth that Ms. Williams, when

asked to provide facts supporting her race discrimination claim, was unable to do so as she made

the following statement:

> Regarding Title VII as a minority, and a minority using my motor vehicle record to deny
> me employment I fell that I was discriminated upon. ... Because of – as a minority it's
> illegal to use a criminal record to actually, you know, give or take away employment. ...

Id. In support of this notion, Defendant relies on Plaintiff's testimony which sets forth that

"Plaintiff admitted that: (i) Officer Van Dright, who decided not to approve Plaintiff for hire,

never met or saw her; (ii) AHS's employment application did not inquire about her race; and (iii)

no one at AHS, except Lyn Emond ("Emond"), who did not make the decision to rescind her

employment offer, knew her race." Id. 6.   Based on the foregoing, Defendant moves for

Summary Judgment asserting that Plaintiff fails to allege a claim for race discrimination under

Title VII because Plaintiff does not set forth sufficient facts in order raise an inference of

discrimination as required by the fourth prong of the *prima facie*. Def.'s Mot Summ. J. 5-6.

Relying on EEOC Enforcement Guideline 915.022 which cites *Griggs v. Duke Power

Company*, 401 U.S. 424, 431-32 (1971), Plaintiff argues that Ms. Williams has established a

*prima facie* case of race discrimination because *Griggs* "held that Title VII proscribes practices that are fair in form, but discriminatory in operation. [And, also that] [t]he EEOC noted that in 1991 Congress amended Title VII to codify this analysis of discrimination and its burdens of proof." Pl.'s Mot. Summ. J. 16. Plaintiff asserts that because *Griggs* "held that Title VII proscribes practices that are fair in form, but discriminatory in operation. [And, also that] [t]he EEOC noted that in 1991 Congress amended Title VII to codify this analysis of discrimination and its burdens of proof." Id. Plaintiff asserts that the use of one's criminal background to deny employment without proper safeguards is a Title VII Violation. After carefully assessing both arguments, the Court agrees with Defendant and finds that Plaintiff has failed to establish the fourth prong of the *prima facie* test.

The Third Circuit, in *Sarullo v. United States Postal Serv.*, 352 F. 3d 789 (3d Cir. 2003), affirmed the District Court's grant of summary judgment in favor of defendant employer United States Postal Service ("USPS") with respect to plaintiff employee Sarullo's discrimination claim in violation Title VII finding that Sarullo had not established a *prima facie* case of race employment since the record was absent of evidence establishing that the failure to rehire Sarullo was based on discriminatory animus and the reason proffered for not rehiring Sarullo was a legitimate nondiscriminatory purpose. *Id.* at 794. After being arrested for selling cocaine, Sarullo received a Notice of Removal from employer USPS informing him that he was being terminated as a result of his criminal activity. Sarullo sent a letter to USPS requesting reinstatement to his previous position with USPS, which was forwarded to William Brown ("Brown"), District Manager of Human Resources for the Northern New Jersey District and the individual responsible for deciding to reinstate previous employees. Per a USPS policy prohibiting rehiring individuals removed for cause, Brown denied Sarullo's request. Sarullo

brought a claim against the USPS in the United States District Court for the District of New Jersey alleging that his termination was due to his Native Ancestry in violation of Title VII of the Civil Rights Act of 1964. As it was uncontested that Brown was aware of Sarullo's race or age, the District Court granted summary judgment in favor of USPS since Sarullo failed to demonstrate evidence that the decision to not reinstate Sarullo raised an inference of discrimination to establish a *prima facie* claim and also because the reason set forth for not rehiring Sarullo had a legitimate nondiscriminatory purpose. The Third Circuit affirmed the District Court's decision. *See generally Sarullo v. United States Postal Serv.*, 352 F. 3d 789 (3d Cir. 2003).

Similar to *Sarullo*, AHS does not dispute the first three elements of Williams' *prima facie* case; Williams is an African American woman, her qualifications met the requirements of the position as AHS extended an employment offer, and Williams experienced an adverse employment action when AHS rescinded her offer. Def.'s Mot. Summ. J. 5. Notwithstanding, Williams does not establish the fourth element of the *prima facie* test because she fails to demonstrate AHS's revocation of her offer raises an inference of discriminatory animus. *See Sarullo*, 352 F. 3d at 798. Further similar to *Sarullo*, Williams' evidence of race discrimination rests solely on her own depositions and affidavits that AHS discriminated against her based on her race. Here though, Williams' deposition testimony fails to even provide any supporting events that would create an inference of race discrimination on the part of AHS against the Plaintiff. For example, in her deposition testimony, Williams provided the following:

Q: What facts support your claim that your race played any role in the decision to rescind your offer of employment?

A: Regarding Title VII as a minority, and a minority using my motor vehicle record to deny me employment I feel that I was discriminated upon.

Q: How did Atlantic Health use your motor vehicle record?

A: My motor vehicle criminal or my criminal record maybe instead using my criminal record to discriminate against me, not hiring me.

Q: My question though is what is it about your race. Why do you believe your race, the fact that you're African American played a role in their decision to rescind your employment offer?

A: Because of – as a minority it's illegal to use a criminal record to actually, you know, give or take away employment.

Q: I'm not asking about the criminal record. I'm asking about your race specifically. What do you believe –

A: As a minority, as a black, a minority regarding my race it's illegal to use that.

Q: Any other facts that you're aware of to support your position that your race played a role in their decision to rescind your offer of employment?

A: No, not at this time.

The record also fails to raise an inference that Officer Van Dright acted with a discriminatory intent when he decided that Ms. Williams was not approved for hire at AHS. AHS asserts and Ms. Williams admits that the Application did not inquire as to an applicant's race, Officer Van Dright made the decision not to approve Ms. Williams for hire, Officer Van Dright never met or saw Ms. Williams and lastly that no one at AHS, except for Ms. Emond knew Ms. Williams' race. Lewis 56.1 ¶¶ 45 – 47; Harwin 56.1 Answer ¶ 45 – 47. Ms. Williams does not present any evidence to rebut that Officer Van Dright was aware of Ms. Williams' race or that Officer Van Dright took her criminal history into account in deciding to disapprove hiring Ms. Williams. Additionally, nothing in the record suggests that Officer Van Dright in some way was aware of or inferred Ms. Williams' race. *See Sarullo*, 352 F. 3d 799 ("[N]othing [in the record] supports an inference Brown [heard] of Sarullo's Native American heritage through an office 'grapevine.'") AHS contends that this is a case where Williams' dishonesty on her Application

and in subsequent conversations caused the revocation of her job offer. Def.'s Mot. Summ. J. 11. Based on the foregoing, the Court finds that Plaintiff Williams has not set forth a sufficient basis to infer that the decision to rescind her employment offer was based on a discriminatory purpose or her race.

### B. Legitimate Nondiscriminatory Reason

As set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), if a plaintiff employee demonstrates a *prima facie* case of discrimination under Title VII, the burden then shifts to the defendant employer to establish a legitimate, nondiscriminatory reason for its adverse employment decision, before the burden shifts back to the plaintiff to establish pretext. *See Good-Gaillard v. N.J. Dep't of Corr.*, 625 Fed. App'x 123, 128 n.2 (3d Cir. 2015)(citing *Aman v. Cort Furniture Rental Corp.*, 85 F. 3d 1074, 1087-88 (3d Cir. 1996)("applying the same analysis to plaintiff's retaliation claims under Title VII").

Assuming, *arguendo*, Plaintiff successfully established a *prima facie* claim of race discrimination by proving the four elements discussed above, the burden then shifts to AHS to demonstrate that a legitimate, non-discriminatory reason exists for its actions. Defendant avers that "[e]ven if Plaintiff is able to establish a *prima facie* case of race discrimination, AHS has articulated a legitimate, nondiscriminatory reason for rescinding Plaintiff's employment, offer, namely, AHS's reasonable belief that Plaintiff was dishonest during the application process." Def.'s Mot. Summ. J. 7.

As it is uncontested that AHS provided Williams with a conditional offer contingent upon a criminal background check conducted on all individuals receiving this type of offer. On November 2013, Williams interviewed with Ms. Emond and was offered a position at AHS. It was only after the criminal background check was conducted on Ms. Williams that her offer was

rescinded. Furthermore, Williams testified and it is undisputed that she understood the information in the Application and understood that an employer would withdrawal an offer of employment if an applicant makes a misstatement or provides misleading information, and that she understood that AHS was to conduct a criminal background check. Lewis 56.1 Statement ¶ 22. For these reasons, Defendant has set forth sufficient evidence to demonstrate that due to the results of her criminal background check and based on the evidence of record, AHS had a legitimate nondiscriminatory reason for rescinding Ms. Williams' employment offer.

C. Pretext

After the employer fulfills its burden in establishing a legitimate, nondiscriminatory reason, the burden shifts to the plaintiff to show that the reasons provided by the defendant are false or a mere pretext for discrimination. *Fasold*, 409 F. 3d at 184 ("[T]he aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual.")(citing *Sarullo*, 352 F. 3d at 797). At the third stage in the *McDonnell Douglas* analysis, in order for a plaintiff to defeat summary judgment "when the defendant answers the plaintiff's prima facie case with legitimate, nondiscriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F. 3d 759, 764 (3d Cir. 1994). To prove pretext, a plaintiff must set forth evidence from which a court "could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F. 3d at

764 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F. 2d 509, 523 (3d Cir. 1992). When determining whether or not a stated reason is pretext, the Court "must review the record 'taken as a whole.'" *Reeves v. Sanders Plumbing Prods.*, 530 U.S. 130, 150 (2000)(quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In support of its motion for summary judgment, AHS argues that Ms. Williams fails to meet her ultimate burden of proving pretext because she has failed to set forth competent evidence to raise an inference from which a reasonable juror could conclude that Ms. Williams' race played a role in AHS's decision to rescind the offer of employment. Def.'s Mot. Summ. J. 10. AHS asserts that there is "no competent evidence from which a reasonable juror could conclude that rescinding Plaintiff's employment offer was more likely motivated by a discriminatory animus than by AHS's reasonable belief that Plaintiff was dishonest during the application process." Id. Additionally, AHS contends that Officer Van Dright, who made the final decision not to hire Ms. Williams, never met nor saw Ms. Williams and the Application did not inquire about her race. Id. AHS sets forth that this is not a case where AHS determined that Ms. Williams' prior criminal history disqualified her for employment, rather this case revolves around Ms. Williams' alleged dishonesty on her Application and subsequent conversations that caused AHS to rescind her job offer. Id. In addition, Defendant asserts that the evidence does not establish that Officer Van Dright's decision to not approve Plaintiff for hire was motivated by discriminatory intent as Officer Van Dright had never met or seen Plaintiff and the Application did not inquire about an applicant's race. Id. 11. Defendant asserts that the issue at hand is whether Plaintiff's dishonesty on her application and subsequent conversations caused AHS to rescind the job offer. Id.

Further in support of its motion, AHS argues that its past practice of considering and hiring individuals with a prior criminal history belies any argument by Ms. Williams that AHS engaged in discriminatory hiring practices. Def.'s Mot. Summ. J. 11. From January 1, 2013 through December 31, 2014, AHS asserts that twenty-six applicants were hired as employees after post-criminal background checks indicated that each had contact with the criminal justice system, including convictions. Id. AHS provides the following demographic breakdown of the twenty-eight successful applicants[4]:

| | |
|---|---|
| Asian | 4 |
| Black | 9 |
| Hispanic | 3 |
| Mixed | 1 |
| Not specified | 3 |
| White | 8 |

Based on the foregoing statistics, AHS contends that it is clear that they do not disqualify applicant based on their criminal background and/or race. Id. 12. In light of the foregoing, the Court finds Ms. Williams has failed to fulfill her burden and provide any evidence of pretext while AHS has provided sufficient evidence to demonstrate that AHS does not have a history of engaging in discriminatory hiring practices nor was there any other reason for not hiring Ms. Williams other than her dishonesty.

---

[4] AHS's maintains that twenty-eight applicants were offered positions after background checks revealed contact with the criminal justice system however two applicants declined the offer.

**CONCLUSION**

Based on the foregoing, the Court grants Defendant AHS' motion for summary judgment and denies Plaintiff Williams' cross-motion for summary judgment. An appropriate order accompanies this Opinion.

DATED: May _8th_, 2017

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE